CLERK'S OFFICE U.S. DISTRICT. COURT
AT CHARLOTTESVILLE, VA
FILED

JUL 23 2026

LAURA A. AUSTIN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF VIRGINIA

CHARLOTTESVILLE DIVISION

TANESHA HUDSON, et al.,

Plaintiff,

v.

STONEHENGE HOMEOWNERS ASSOCIATION, INC.;

ASSOCIA ONCALL;

ASSOCIA COMMUNITY GROUP;

DAVID ROBINSON, individually and in his official capacity;

EVELYN DORRIER, individually and in her official capacity;

KARL RITCHEY, individually and in his official capacity;

JENNIFER SCHERRER, individually and in her official capacity;

PHILIP ADAMS, individually and in his official capacity;

WALTER CAMPBELL, individually and in his official capacity;

SANJAY SURI, individually and in his official capacity;

TOM KELLY, individually and in his official capacity;

DON VALCOURT, individually and in his official capacity;

STEPHANIE KORBELL, individually and in his official capacity;

KIMBERLY WALKER, individually and in his official capacity;

Defendants.

**AMENDED COMPLAINT**

## I. NATURE OF THE ACTION

1. This is a civil action brought pursuant to the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3619, the Civil Rights Act of 1866, including 42 U.S.C. §§ 1981 and 1982, and Virginia law, seeking declaratory, injunctive, compensatory, punitive, and equitable relief arising from Defendants' alleged pattern and practice of racial discrimination, disparate treatment, retaliation, selective enforcement of homeowners' association rules, denial of housing-related services, and interference with Plaintiff's contractual and property rights.

2. Plaintiff alleges that Defendants intentionally administered the Stonehenge Homeowners Association ("HOA") in a discriminatory manner by denying Plaintiff, an African-American

homeowner, the equal benefits, privileges, services, and protections afforded to similarly situated white homeowners.

3. Plaintiff alleges that Defendants' conduct extended beyond isolated disputes concerning property maintenance and instead reflected an ongoing course of discriminatory administration affecting virtually every aspect of Plaintiff's ownership and enjoyment of her residence, including maintenance decisions, architectural matters, communications, financial assessments, enforcement actions, and participation in community governance.

4. Plaintiff further alleges that after she reported unsafe conditions, requested repairs, challenged unequal treatment, filed administrative complaints, and pursued judicial remedies, Defendants retaliated by increasing enforcement actions, restricting Plaintiff's communications, deleting electronic postings, limiting access to HOA systems, imposing additional financial obligations, delaying repairs, and adopting policies directed specifically toward Plaintiff.

5. Plaintiff does not seek to relitigate construction-defect issues previously resolved in state court. Rather, Plaintiff seeks relief for independent federal violations arising from newly discovered comparator evidence and continuing discriminatory conduct occurring before, during, and after the prior litigation.

6. Plaintiff alleges that Defendants' discriminatory conduct deprived her of the full use and enjoyment of her home, diminished the value and benefits of her ownership interest, caused substantial emotional distress and financial injury, and interfered with rights guaranteed by federal law.

7. The Fair Housing Act prohibits discrimination in the "terms, conditions, or privileges" of homeownership and in the provision of housing-related services. Plaintiff alleges that Defendants violated these protections by administering mandatory HOA obligations in a racially discriminatory manner. The Eleventh Circuit has recognized that discriminatory administration of mandatory HOA rules and services after acquisition of a home may fall within the scope of 42 U.S.C. § 3604(b). Watts v. Joggers Run Prop. Owners Ass_n_133 F.4th 1032

## II. JURISDICTION AND VENUE

8. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because this action arises under the Constitution and laws of the United States, including the Fair Housing Act and the Civil Rights Act of 1866.

9. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 over Plaintiff's state-law claims because those claims arise from the same nucleus of operative facts as the federal claims and form part of the same case or controversy.

10. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to these claims occurred within this judicial district, the subject property is located within this district, and Defendants regularly transact business within this district.

11. This Court possesses authority to grant declaratory, injunctive, equitable, and monetary relief pursuant to 28 U.S.C. §§ 2201 and 2202, the Fair Housing Act, and other applicable federal statutes.

## III. PARTIES

12. Plaintiff Tanesha Hudson is an African-American homeowner residing in Charlottesville, Virginia. At all relevant times, Plaintiff owned and occupied residential property governed by the Stonehenge Homeowners Association and was entitled to equal treatment under the Association's governing documents.

13. Defendant Stonehenge Homeowners Association, Inc. is a Virginia nonstock corporation responsible for administering the Association's Declaration, Bylaws, Rules and Regulations,

maintaining common property, enforcing restrictive covenants, collecting assessments, supervising maintenance, and providing services to homeowners.

14. Defendant Associa OnCall is a property management company retained by the HOA to administer daily operations, communicate with homeowners, coordinate repairs, supervise vendors, enforce HOA rules, maintain records, and implement directives of the Board of Directors.

15. Defendant Associa Community Group is the parent or supervisory entity responsible for overseeing Associa OnCall, establishing operational policies, supervising management personnel, and ensuring compliance with contractual and legal obligations.

16. Defendant David Robinson is sued in both his individual and official capacities. At all relevant times, Robinson served as President of the HOA and exercised authority over Board decisions, covenant enforcement, homeowner communications, maintenance approvals, and implementation of Association policies.

17. Defendant Evelyn Dorrier is sued in both her individual and official capacities. At all relevant times, Dorrier served as a member of the Board of Directors and participated in decisions concerning enforcement, homeowner treatment, maintenance, and governance.

18. Defendant Karl Ritchey is sued in both his individual and official capacities. At all relevant times, Ritchey participated in Board decisions affecting Plaintiff's rights as a homeowner.

19. Defendant Jennifer Scherrer is sued in both her individual and official capacities for actions taken during her service on the Board of Directors.

20. Defendant Philip Adams is sued in both his individual and official capacities. At all relevant times, Adams served in a senior operational role for Associa and exercised supervisory authority over HOA management personnel responsible for Plaintiff's community.

21. Defendant Walter Campbell is sued in both his individual and official capacities for supervisory actions related to HOA operations and management.

22. Defendant Sanjay Suri is sued in both his individual and official capacities. At all relevant times, Suri served as Community Manager and/or Director of Operations and participated in communications, enforcement decisions, and maintenance administration.

23. Defendant Steven Brecker is sued in both his individual and official capacities. At all relevant times, Brecker served as Community Manager and was responsible for receiving homeowner complaints, coordinating maintenance, enforcing governing documents, and communicating with residents.

24. At all relevant times, each individual Defendant acted under color of authority delegated by the HOA or Associa entities and within the scope of his or her agency, employment, or office.

25. Plaintiff alleges that each individual Defendant personally participated in, directed, authorized, approved, ratified, or knowingly acquiesced in the discriminatory and retaliatory conduct alleged herein. Plaintiff further alleges that each Defendant acted in concert with the others and is jointly and severally liable to the extent permitted by law.

## IV. FACTUAL ALLEGATIONS

## A. Plaintiff's Acquisition of the Property and Contractual Relationship

26. Plaintiff purchased residential property located within the Stonehenge Homeowners Association ("HOA"), thereby becoming a mandatory member of the Association and subject to its recorded Declaration, Bylaws, Rules and Regulations, Architectural Guidelines, and all subsequently adopted policies.

27. Membership in the HOA was not voluntary but constituted a mandatory condition of ownership. Plaintiff's purchase obligated her to pay assessments, comply with governing documents, and participate in the Association under the same terms and conditions afforded to every other homeowner.

28. In exchange for these obligations, Plaintiff acquired contractual rights to receive equal maintenance services, equal enforcement of governing documents, equal participation in Association governance, equal consideration of maintenance requests, equal architectural review, and equal access to Association communications, records, facilities, and services.

29. Plaintiff reasonably relied upon Defendants' representations that the governing documents would be administered fairly, uniformly, and without unlawful discrimination.

30. At all relevant times, Defendants exercised exclusive authority over maintenance decisions, contractor selection, architectural approvals, financial assessments, enforcement actions, homeowner communications, and implementation of Association policies.

31. Defendants owed fiduciary, contractual, statutory, and common-law duties to administer the Association fairly and in accordance with the governing documents and applicable law.

## B. Development of Property Defects

32. Beginning in approximately 2020, Plaintiff began experiencing significant maintenance and structural issues affecting her residence, including rodent infestation, water intrusion, defective siding installation, missing drip edges, damaged windows, and related structural deficiencies.

33. Plaintiff promptly notified Defendants of these conditions through written communications, maintenance requests, electronic correspondence, and other reports.

34. Defendants received repeated notice that these conditions affected the safety, habitability, structural integrity, and value of Plaintiff's residence.

35. Plaintiff cooperated with inspections, provided requested documentation, and made her residence available for evaluation whenever requested.

36. Independent inspectors later confirmed numerous construction and maintenance deficiencies requiring corrective action.

37. Despite actual knowledge of these conditions, Defendants allegedly delayed, denied, minimized, or inadequately addressed Plaintiff's maintenance requests.

38. Plaintiff alleges that Defendants frequently denied responsibility for defects despite receiving information indicating corrective action was warranted.

39. As a consequence of these alleged failures, Plaintiff continued residing in a home affected by unresolved structural and maintenance deficiencies.

40. Plaintiff incurred additional expenses, inconvenience, stress, and disruption as conditions allegedly remained unresolved.

## C. Comparator Evidence Discovered After Prior Litigation

41. Following conclusion of Plaintiff's prior breach-of-contract litigation, Plaintiff alleges that she discovered information demonstrating materially different treatment of similarly situated white homeowners.

42. Plaintiff alleges that these comparator facts were not fully known during the earlier litigation and therefore form part of the factual basis for the present federal claims.

43. Plaintiff alleges that similarly situated white homeowners reporting comparable maintenance issues received substantially faster responses from HOA management.

44. Plaintiff further alleges that white homeowners received more prompt inspections, approvals, contractor authorizations, and repair completion.

45. Plaintiff alleges that white homeowners were permitted to utilize preferred contractors or vendors under circumstances in which Plaintiff was denied similar accommodations.

46. Plaintiff alleges that maintenance requests submitted by white homeowners were processed more efficiently and with fewer administrative obstacles.

47. Plaintiff further alleges that white homeowners were not subjected to comparable delays, financial burdens, or enforcement actions relating to similar maintenance concerns.

48. Plaintiff contends that these differences in treatment were not isolated occurrences but reflected a broader pattern of unequal administration.

49. Plaintiff alleges that the principal distinguishing factor between herself and the identified comparators was race.

---

## D. Unequal Enforcement of HOA Rules   See Exibhit A (Letters)

50. Plaintiff alleges that Defendants selectively enforced the Association's governing documents against her while declining to impose comparable restrictions upon similarly situated white homeowners.

51. Plaintiff alleges that communications she submitted through Association platforms were removed or deleted.

52. Plaintiff further alleges that her access to TownSq and other Association communication systems was restricted.

53. Plaintiff alleges that white homeowners were permitted to criticize HOA leadership without experiencing comparable restrictions.

54. Plaintiff alleges that Defendants imposed heightened scrutiny upon Plaintiff's conduct while overlooking similar conduct by other homeowners.

55. Plaintiff contends that enforcement decisions lacked consistency and were applied differently depending upon the homeowner involved.

56. Plaintiff alleges that Defendants adopted or implemented additional communication and decorum policies after Plaintiff challenged their actions and that these policies were enforced disproportionately against her.

57. Plaintiff alleges that the cumulative effect of these actions denied her equal participation in community governance.

58. Plaintiff further alleges that these actions impaired her contractual rights as an HOA member.

## E. Retaliation Following Protected Activity

59. Plaintiff repeatedly exercised rights protected by federal and state law by reporting unsafe housing conditions, requesting maintenance, communicating with Association officials, filing administrative complaints, and pursuing judicial remedies.

60. Defendants were aware of Plaintiff's protected activities.

61. Plaintiff alleges that after engaging in these activities, Defendants escalated adverse actions directed toward her.

62. Plaintiff alleges that such actions included deletion of electronic communications, restrictions on access to HOA systems, additional enforcement measures, delayed maintenance, financial penalties, attorney fee assessments, liens, and cease-and-desist correspondence.

63. Plaintiff contends that these actions would discourage a reasonable homeowner from asserting rights protected by the Fair Housing Act.

64. Plaintiff alleges that Defendants' asserted justifications for these actions were pretextual and were not applied equally to similarly situated white homeowners.

65. Plaintiff alleges that the retaliatory conduct continued over an extended period and substantially interfered with her use and enjoyment of her residence.

## F. Continuing Damages    *See Ex. D CICB complaint letter for windows*

66. As a direct and proximate result of the conduct alleged herein, Plaintiff contends that she sustained financial losses, including expenses associated with delayed repairs, property damage, assessments, and other costs.

67. Plaintiff further alleges emotional distress, humiliation, anxiety, frustration, inconvenience, and diminished enjoyment of her home.

68. Plaintiff alleges that the discriminatory administration of HOA services impaired the value of the contractual rights associated with her homeownership.

69. Plaintiff contends that Defendants' conduct deprived her of equal access to housing-related services and benefits provided to similarly situated homeowners.

70. Plaintiff alleges that Defendants' actions were intentional, willful, reckless, or undertaken with deliberate indifference to her federally protected rights, entitling her to the remedies available under applicable law, if proven.

# COUNT I

**Violation of the Fair Housing Act**    See Ex. B (Fair Housing Complaint Letter)

Ex. C (Restricted Access Letters)
Restricted from obtaining documents email

**42 U.S.C. § 3604(b)**

*(Discrimination in the Terms, Conditions, Privileges, Services, and Facilities of Housing)*

71. Plaintiff realleges and incorporates by reference Paragraphs 1 through 70 as though fully set forth herein.

72. At all relevant times, Plaintiff was an owner and occupant of a dwelling protected under the Fair Housing Act, 42 U.S.C. §§ 3601–3619.

73. Defendants owned, operated, managed, governed, supervised, controlled, or otherwise administered housing-related services, facilities, privileges, rules, policies, and maintenance affecting Plaintiff's residence.

74. The Fair Housing Act prohibits discrimination in the terms, conditions, or privileges of the sale or rental of a dwelling, and in the provision of services or facilities in connection therewith, because of race.

75. Plaintiff is an African-American homeowner and is a member of a protected class under the Fair Housing Act.

76. Plaintiff fulfilled all material obligations imposed by the Declaration, Bylaws, Rules and Regulations, Architectural Guidelines, and other governing documents applicable to homeowners within the Association.

77. Defendants nevertheless administered Plaintiff's rights, obligations, maintenance requests, communications, assessments, and participation in Association affairs differently than similarly situated white homeowners.

78. Plaintiff alleges that Defendants intentionally delayed, denied, restricted, or otherwise impaired housing-related services available to Plaintiff while providing comparable services to similarly situated white homeowners under materially similar circumstances.

79. Plaintiff further alleges that Defendants selectively enforced governing documents against Plaintiff while declining to impose comparable enforcement upon similarly situated white homeowners.

80. Plaintiff alleges that Defendants imposed unequal administrative burdens upon Plaintiff regarding maintenance requests, inspections, approvals, communications, and enforcement proceedings.

81. Plaintiff further alleges that Defendants denied Plaintiff equal access to the benefits and privileges of mandatory HOA membership.

82. Defendants' conduct allegedly interfered with Plaintiff's full use, enjoyment, value, and ownership of her residence.

83. Plaintiff alleges that race was a motivating factor in Defendants' decisions and treatment.

84. Defendants' conduct constitutes discrimination in the provision of services and privileges associated with homeownership in violation of 42 U.S.C. § 3604(b), as alleged.

85. Plaintiff alleges that Defendants' discriminatory conduct continued after Plaintiff acquired her home through the administration of mandatory homeowners' association services and obligations. The legal theory that post-acquisition discriminatory administration of HOA services may be actionable under § 3604(b) is consistent with the analysis discussed in *Watts v. Joggers Run Property Owners Association.*

86. As a direct and proximate result of Defendants' alleged conduct, Plaintiff has suffered damages including, but not limited to:

a. Economic loss;

b. Out-of-pocket expenses;

c. Loss of property-related benefits;

d. Loss of enjoyment of her home;

e. Emotional distress;

f. Humiliation;

g. Anxiety;

h. Inconvenience;

i. Diminished value of contractual rights associated with homeownership; and

j. Such additional damages as may be established at trial.

87. Plaintiff is entitled to recover all damages authorized under the Fair Housing Act, together with appropriate declaratory, equitable, injunctive, and monetary relief.

---

## COUNT II

## Violation of the Fair Housing Act

## 42 U.S.C. § 3617

*(Retaliation, Interference, Coercion, Intimidation, and Threats)*

88. Plaintiff incorporates by reference Paragraphs 1 through 87 as though fully restated herein.

89. Section 3617 of the Fair Housing Act prohibits coercing, intimidating, threatening, or interfering with any person because that person exercised or enjoyed rights protected by the Fair Housing Act.

90. Plaintiff repeatedly exercised rights protected by federal law by:

a. Reporting unsafe and defective housing conditions;

b. Requesting maintenance and repairs;

c. Seeking equal treatment under HOA governing documents;

d. Communicating complaints to HOA management and Board members;

e. Filing administrative complaints; and

f. Pursuing judicial remedies concerning alleged discriminatory treatment.

91. Defendants were aware of Plaintiff's protected activities.

92. Plaintiff alleges that after engaging in these protected activities, Defendants increased adverse actions directed toward Plaintiff.

93. Plaintiff alleges that Defendants retaliated by, among other things:

a. Restricting Plaintiff's communications;

b. Removing or limiting Plaintiff's electronic postings;

c. Restricting Plaintiff's participation in HOA communication platforms;

d. Increasing enforcement actions;

e. Delaying maintenance responses;

f. Imposing unequal financial burdens;

g. Sending cease-and-desist communications; and

h. Otherwise interfering with Plaintiff's ability to enjoy rights protected by the Fair Housing Act.

Hudson Complaint2 (1).docx

94. Plaintiff alleges that these actions would deter a reasonable homeowner from exercising rights protected under the Fair Housing Act.

95. Plaintiff further alleges that Defendants' stated reasons for their actions were pretextual and were not applied equally to similarly situated homeowners outside Plaintiff's protected class.

96. Defendants' conduct allegedly constituted interference, coercion, intimidation, and retaliation prohibited by 42 U.S.C. § 3617.

97. As a direct and proximate result of Defendants' alleged retaliation, Plaintiff suffered economic losses, emotional distress, inconvenience, loss of housing-related benefits, and other damages recoverable under applicable law.

98. Plaintiff is entitled to all legal and equitable remedies authorized by 42 U.S.C. § 3617, including compensatory damages, punitive damages where supported by the evidence, reasonable attorney's fees and costs if authorized, declaratory relief, and permanent injunctive relief.

# COUNT III

## Violation of 42 U.S.C. § 1981

*(Race Discrimination in the Making and Enforcement of Contracts)*

99. Plaintiff realleges and incorporates by reference Paragraphs 1 through 98 as though fully set forth herein.

100. Section 1981 guarantees that all persons within the United States shall have the same right to make and enforce contracts as is enjoyed by white citizens.

101. Plaintiff entered into contractual relationships arising from her purchase of property within Stonehenge Homeowners Association, including rights and obligations established by the recorded Declaration, Bylaws, Rules and Regulations, Architectural Guidelines, assessment obligations, and contracts governing the administration of the Association.

102. Plaintiff also entered into contractual relationships with Defendants through mandatory HOA membership, payment of assessments, acceptance of governing documents, and Defendants' contractual obligation to administer the Association in accordance with those governing documents.

103. Plaintiff fully performed, or was excused from performing, all material obligations required under those contractual agreements.

104.    Plaintiff alleges that Defendants intentionally impaired her contractual rights because of her race.

105.    Defendants allegedly denied Plaintiff the same contractual benefits, privileges, protections, and services provided to similarly situated white homeowners.

106.    Plaintiff alleges that Defendants intentionally interfered with her contractual right to receive equal maintenance services, equal enforcement of governing documents, equal architectural review, equal participation in Association governance, equal communications, and equal treatment under HOA policies.

107.    Plaintiff further alleges that Defendants selectively enforced contractual obligations against Plaintiff while declining to enforce similar provisions against similarly situated white homeowners.

108.    Plaintiff alleges that Defendants impaired Plaintiff's ability to enjoy the benefits of her contractual relationship with the Association by imposing unequal conditions, delays, restrictions, and financial burdens.

109.    Plaintiff alleges that race was a motivating factor in Defendants' actions.

110.    Defendants' conduct allegedly deprived Plaintiff of the full and equal benefit of contractual relationships protected by 42 U.S.C. § 1981.

111.    As a direct and proximate result of Defendants' alleged violations, Plaintiff suffered financial losses, emotional distress, loss of contractual benefits, inconvenience, humiliation, and additional damages to be proven at trial.

112.    Plaintiff is entitled to compensatory damages, punitive damages where permitted by law and supported by the evidence, declaratory relief, injunctive relief, costs, and any other relief authorized under 42 U.S.C. § 1981.

# COUNT IV

## Violation of 42 U.S.C. § 1982

**(Race Discrimination Affecting Property Rights)**    See Ex. E (Lien placed on home before we went to court for dues)

113.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 112 as though fully set forth herein.

114.    Section 1982 guarantees that all citizens shall have the same right as white citizens to inherit, purchase, lease, sell, hold, and convey real and personal property.

115.    Plaintiff is an African-American citizen and homeowner entitled to the protections afforded by 42 U.S.C. § 1982.

116.    Plaintiff alleges that Defendants intentionally interfered with her right to hold, use, enjoy, maintain, improve, and benefit from her residential property on equal terms with white homeowners.

117.    Plaintiff further alleges that Defendants' discriminatory administration of maintenance, repairs, covenant enforcement, communications, assessments, governance, and housing-related services substantially impaired Plaintiff's ability to enjoy the full incidents of property ownership.

118.    Plaintiff alleges that Defendants provided more favorable treatment to similarly situated white homeowners concerning maintenance requests, enforcement decisions, and administration of Association services.

119.    Plaintiff further alleges that Defendants imposed greater burdens upon Plaintiff because of her race, thereby diminishing the benefits associated with ownership of her residence.

120.    Plaintiff alleges that Defendants' actions reduced Plaintiff's ability to fully use and enjoy her property and diminished the value of rights associated with ownership.

121.    Plaintiff further alleges that Defendants' discriminatory conduct interfered with Plaintiff's peaceful enjoyment, security, and use of her home.

122.    Defendants allegedly acted intentionally, willfully, maliciously, or with reckless disregard for Plaintiff's federally protected property rights.

123.    Plaintiff alleges that Defendants' conduct violated 42 U.S.C. § 1982 by denying Plaintiff the same property rights enjoyed by similarly situated white homeowners.

124.    As a direct and proximate result of Defendants' alleged conduct, Plaintiff sustained damages including economic loss, emotional distress, inconvenience, impairment of property rights, diminished enjoyment of her home, and other damages to be established by the evidence.

125.    Plaintiff is entitled to recover all legal and equitable relief available under 42 U.S.C. § 1982, including compensatory damages, punitive damages where authorized and supported by the evidence, declaratory relief, permanent injunctive relief, costs, and any additional relief deemed just and proper.

# COUNT V

## Hostile Housing Environment

*(Fair Housing Act – 42 U.S.C. §§ 3604(b) and 3617)*

126.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 125 as though fully set forth herein.

127.    Plaintiff alleges that Defendants engaged in a continuing course of conduct that, collectively, created a hostile housing environment because of race. Plaintiff bases this claim on the cumulative effect of the conduct alleged throughout this Complaint, including unequal

treatment, selective enforcement, retaliation, restrictions on communications, and denial of housing-related services.

128.    Plaintiff alleges that this conduct was sufficiently severe or pervasive to interfere with her use and enjoyment of her dwelling and the privileges of homeownership.

129.    Plaintiff further alleges that Defendants knew of, participated in, authorized, ratified, or failed to prevent the alleged discriminatory conduct despite having the authority to do so.

130.    As a result of the alleged hostile housing environment, Plaintiff contends that she suffered emotional distress, humiliation, anxiety, loss of enjoyment of her home, financial harm, and other damages recoverable under applicable law.

131.    Plaintiff seeks all remedies available under the Fair Housing Act for these alleged violations, including declaratory, injunctive, compensatory, and, where legally available and factually supported, punitive relief.

# COUNT VI

## Breach of Fiduciary Duty

*(Virginia Common Law)*

132.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 131 as though fully set forth herein.

133.    At all relevant times, Stonehenge Homeowners Association, Inc., acting through its Board of Directors, officers, agents, committees, and management company, owed fiduciary duties to Plaintiff and all Association members under Virginia law and the governing documents of the Association.

134.    These fiduciary duties included, but were not limited to, duties of loyalty, good faith, fair dealing, impartiality, reasonable care, honesty, transparency, and the obligation to administer the Association for the benefit of all members without unlawful discrimination or favoritism.

135.    Defendants further owed duties to enforce the governing documents uniformly, administer Association affairs in a fair and consistent manner, protect Association assets, and exercise reasonable business judgment in decisions affecting homeowners.

136.    Plaintiff alleges that Defendants breached these fiduciary duties by, among other things:

a. Selectively enforcing the governing documents;

b. Administering maintenance responsibilities in an unequal manner;

c. Failing to act impartially toward Plaintiff;

d. Authorizing or ratifying discriminatory treatment;

e. Retaliating against Plaintiff after she asserted her legal rights;

f. Failing to investigate complaints in good faith;

g. Failing to exercise reasonable oversight of Association operations; and

h. Otherwise acting contrary to the interests of the Association and its members.

137.    Plaintiff further alleges that the individual Board members knowingly participated in, approved, directed, or ratified the conduct described herein.

138.    Plaintiff alleges that these breaches were intentional, willful, reckless, or constituted a gross departure from the fiduciary obligations owed to Association members.

139.     As a direct and proximate result of Defendants' alleged breaches of fiduciary duty, Plaintiff sustained economic damages, property-related damages, emotional distress, loss of contractual benefits, and other damages according to proof.

140.     Plaintiff requests compensatory damages, equitable relief, declaratory relief, injunctive relief, costs, pre- and post-judgment interest, and all other relief available under Virginia law.

# COUNT VII

## Breach of Contract

141.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 140 as though fully set forth herein.

142.     The recorded Declaration of Covenants, Conditions and Restrictions, the Bylaws, Rules and Regulations, Architectural Guidelines, and related governing documents constitute enforceable contractual obligations between the Association and each homeowner.

143.     Plaintiff fully performed, or was excused from performing, all material obligations required of her under the governing documents, including payment of assessments and compliance with applicable Association rules.

144.     Defendants were contractually obligated to administer the governing documents fairly, uniformly, and in accordance with their express terms.

145.     Plaintiff alleges that Defendants materially breached these contractual obligations by:

a. Failing to provide required maintenance services;

b. Failing to uniformly enforce the governing documents;

c. Applying Association policies inconsistently;

d. Denying Plaintiff benefits available to similarly situated homeowners;

e. Improperly assessing charges or obligations;

f. Restricting Plaintiff's contractual rights as a member of the Association; and

g. Otherwise failing to perform obligations required by the governing documents.

146.    Plaintiff alleges that these breaches substantially deprived her of the benefits of her contractual relationship with the Association.

147.    As a direct and proximate result of Defendants' alleged breaches, Plaintiff suffered financial losses, property damage, diminished contractual benefits, inconvenience, emotional distress where recoverable, and additional damages according to proof.

148.    Plaintiff seeks all remedies available for breach of contract under Virginia law, including compensatory damages, declaratory relief, equitable relief, costs, interest, and such additional relief as the Court deems appropriate.

# COUNT VIII

## Negligence Per Se

149.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 148 as though fully set forth herein.

150.    Defendants owed Plaintiff duties recognized under Virginia law to exercise ordinary and reasonable care in administering the Association, supervising contractors, maintaining common areas and Association responsibilities, responding to maintenance complaints, and carrying out obligations undertaken through the governing documents.

151.    Defendants further owed duties to exercise reasonable care in supervising employees, agents, contractors, vendors, management personnel, and others acting on behalf of the Association.

152.    Plaintiff alleges that Defendants breached these duties by failing to exercise reasonable care in the investigation, maintenance, supervision, administration, and management of matters affecting Plaintiff's property.

153.    Plaintiff further alleges that Defendants negligently supervised Association personnel and management companies responsible for carrying out maintenance and homeowner services.

154.    Plaintiff alleges that Defendants failed to correct known conditions after receiving repeated notice of maintenance concerns and other issues affecting Plaintiff's residence.

155.    Plaintiff contends that these negligent acts and omissions directly and proximately caused property damage, economic losses, inconvenience, and other legally recoverable damages.

156.    Plaintiff seeks compensatory damages, costs, interest, and all additional relief authorized under Virginia law.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, jointly and severally where permitted by law, and award the following relief:

A. Declare that Defendants violated Plaintiff's rights under the Fair Housing Act, 42 U.S.C. §§ 3604(b) and 3617, if proven;

B. Declare that Defendants violated Plaintiff's rights under 42 U.S.C. §§ 1981 and 1982, if proven;

C. Enter preliminary and permanent injunctive relief requiring Defendants to cease discriminatory and retaliatory practices and administer the Association in compliance with federal and Virginia law;

D. Award compensatory damages in an amount to be determined at trial;

E. Award punitive damages against those Defendants for whom such damages are legally available and supported by the evidence;

F. Award damages for breach of fiduciary duty, breach of contract, and negligence per se as permitted by Virginia law;

G. Award pre-judgment and post-judgment interest as allowed by law;

H. Award taxable costs and, where authorized by statute, reasonable attorney's fees;

I. Grant such other and further legal or equitable relief as the Court deems just and proper.

---

# JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Vanesha Hudson, Pro Se

**TANESHA HUDSON**

Plaintiff, Pro Se

## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF VIRGINIA

## CHARLOTTESVILLE DIVISION

Civil Action Number:

Defendant(s).

## LOCAL RULE 83.1(M) CERTIFICATION

**I declare under penalty of perjury that:**

**No attorney has prepared, or assisted in the preparation of:**

Name of *Pro Se* Party Tanesha Hudson

Signature of *Pro Se* Party  *Tanesha Hudson*

Executed on:

**OR**

**The following attorney(s) prepared or assisted me in preparation of**

_____.  (Ti

(Name of Attorney)

_____

(Address of Attorney)

_____

(Telephone Number of Attorney)

Prepared, or assisted in the preparation of, this document

_____

(Name of *Pro Se* Party (Print or Type)

_____

Signature of *Pro Se* Party

Executed on: _____ (Date)